UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT BAREFOOT, et al, : | |
| : | |
| Plaintiffs, : | Civil Action No. 06-2942 (JAP) |
| : | |
| v. : | **OPINION** |
| : | |
| WELLNESS PUBLISHING, et al. : | |
| : | |
| Defendants. : | |

In this action Plaintiffs Robert Barefoot ("Barefoot") and Deonna Enterprises, Inc.

("Deonna") (together, "Plaintiff") allege that Defendants Wellness Publishing, Holt M.D.

Consulting Inc. ("Holt Consulting"), Nature's Benefit, Inc., and Stephen Holt ("Holt")

breached a settlement agreement entered by the parties in 2004. Defendants have

counterclaimed, alleging that Plaintiff has breached the settlement agreement and has

infringed Defendants' trademark and trade dress. Presently before the Court is a motion by

Plaintiff for partial summary judgment as to (i) Plaintiff's claim against Defendants for breach

of the settlement agreement; and (ii) all counterclaims against Plaintiff.[1]  Also before the

Court are three motions for summary judgment by Defendants. Defendants have moved for

summary judgment  (i) "with regard to liability for the licensing for sale of Barefoot Coral

Calcium Plus and receipt of royalties therefrom; (ii) as to any liability of Holt and Wellness

---

[1]There are five counts contained in Holt's counterclaim: breach of contract, breach of the
implied covenant, unjust enrichment, trade dress infringement and Lanham Act violations.

Publishing; and (iii) with respect to Plaintiff's damages claim.  For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.  Defendants motions as to damages and the sale of Coral Calcium Plus are denied, and the motion as to the liability of Holt and Wellness Publishing is granted.

## I.  Background

Defendant Holt is "a medical doctor who owns all or most of several companies involved in the dietary supplement industry, including Holt Consulting."  Pl. Rule 56.1 Statement ¶ 3.   In 2001, an entity known as "Wellness Publishing.com," a wholly-owned affiliate of Holt Consulting, entered into an agreement with Plaintiff (the "Publishing Contract") with respect to a manuscript entitled "Barefoot on Coral Calcium" (the "Work") by which Plaintiff granted to Wellness Publishing.com certain exclusive rights in the Work.  *See* Publishing Contract, attached to Nagel Aff. at Ex. B.  The Publishing Contract gave Holt Consulting the right to use Barefoot's name and likeness to advertise and promote the sale of the Work as well as the sale of unspecified "associated items," and permitted Holt Consulting to sublicense the rights granted thereunder.  Publishing Contract at 3.

Ultimately, Holt Consulting and other companies owned by Holt ended up in litigation in the District of Arizona (the "Arizona litigation") with Barefoot and companies owned by Barefoot over the respective rights and obligations of the parties under the Publishing Contract.  Pl. R. 56.1 Statement ¶ 10.  That matter was captioned *Barefoot v. Holt MD Consulting, Inc.*, Civil Action No. 02-1332.  Similarly, on October 9, 2002, Holt, among others, initiated the action *Wellness Publishing , et al., v. Robert Barefoot, et al.*, Civil Action

2

No. 02-3773, in this district against Barefoot and Deonna, as well as other defendants,

alleging certain claims, among others, that arose from the Publishing Contract.  In 2004, Holt

and Barefoot reached a resolution of the claims between them, and the parties[2] entered into a

Mutual Release and Settlement Agreement ("Settlement Agreement") on March 14, 2004.

Affidavit of Ronald Nagel ("Nagel Aff."), Ex. D.

    During the Arizona litigation, the parties had engaged in settlement discussions

through their respective legal counsel.  *See* Nagel Supp. Aff., Ex. C ("Sullivan Dep.") at 109.

However, these attempts at settlement failed.  At this time, Barefoot was introduced to

Stephen Bailey, who represented to Barefoot that he was a "successful businessman" who

wanted to assist Barefoot in reaching a settlement with Holt and his companies.  Barefoot

Decl. ¶ 4.  Bailey negotiated the settlement between Barefoot and Holt, and drafted the

Settlement Agreement entered by the parties.  Deposition of Stephen Bailey ("Bailey Dep.") at

12.  Legal counsel was expressly excluded from involvement in this settlement.  According to

the express terms of the Settlement Agreement, both parties "waived the right to attorney

review of [the] agreement," and agreed not to "permit legal counsel to interfere with [the]

settlement."  Settlement Agreement at 4.  Both parties warranted that there had been "no

involvement of counsel involved in the litigation in the construction of [the] settlement

agreement."  *Id.*

---

[2]The Settlement Agreement is between Barefoot "and his corporations Deonna
Enterprises  and Karbo Enterprises" and Holt "and all of his corporations and affiliates including
Natures Benefit Inc., Wellness Publishing, Holt MD Consulting Inc., Bio Quench and its
predecessor corporation Bio Therapies Inc., and other entities in which [Holt] may be involved in
the sale of coral calcium and books on the subject of coral calcium."  Settlement Agreement at 1.

The stated purpose of the Settlement Agreement was "to settle all matters relative to the [then-]current litigation between Robert Barefoot and Steven Holt and their respective corporations."  Settlement Agreement at 1.  The Agreement enumerated the respective responsibilities of each party to the agreement.  As to Holt "through his corporations," the Agreement provided as follows:

• Wellness Publishing was to convey to Barefoot "the rights to the book Barefoot on Coral Calcium: An Elixir of Life,"  and all "escrowed book royalties" were to be paid to a not-for-profit foundation called "Coral For Life."  *Id.*  Further, the Settlement Agreement expressly stated that "the publishing contract in dispute is terminated."  *Id.*

• Stephen Holt was to donate $100,000 in cash to "Coral for Life" in Nevada.  *Id.*

• Holt was to "offer assistance to Mr. Barefoot through Mr. Stephen Bailey . . . regarding future business undertakings."  *Id.*

• Holt was to "arrange to forward" ten thousand units of coral calcium (five thousand of the Barefoot Coral Calcium Plus formulation and five thousand Marine Coral Minerals) to "Coral For Life."  *Id.*

• All litigation against Barefoot, Deonna and certain other parties would be dismissed. *Id.* at 2.

• Holt was to "discuss mutual strategies against" certain other parties that "may have infringed on the rights of" Barefoot and Holt or any of their corporations.  *Id.*

• Natures Benefit was to "donate a five percent royalty on future sales of Barefoot Coral Calcium Plus to "Coral For Life" at retail pricing with pro-rated commissions in

4

wholesale sales. *Id.*

> • Barefoot would "receive the rights to use the trademark Barefoot on Coral Calcium Plus or variations thereof for the sale of coral calcium products," but Barefoot could "not own or reproduce on any labels or commercial materials the dress code of the product Barefoot Coral Calcium Plus for any commercial purpose" without Holt's written permission. *Id.*

> • Holt was to "cease publishing all of his current books on coral calcium and each party agree[d] to strict terms of non-disparagement and mutual cooperation with all attempts to support each other's good standing." *Id.*

As to Barefoot "and his corporations," the Settlement Agreement provided:

> • Barefoot was to "permit any of [Holt's] corporations or affiliates to manufacture all coral calcium products in an exclusive manner to be sold by an entity approved by Mr. Steven Bailey which must be endorsed by Mr. Barefoot, in a regulatory approved manner providing that Mr. Bailey accepts the specification of the products on behalf of Mr. Barefoot. Products must not contain toxic elements or amounts of ingredients." *Id.*

> • Barefoot was to "make best effort to promote and endorse all dietary supplement products in good faith within the guidelines of regulatory control . . .. There must be no unfair competition." *Id.*

On June 28, 2006, Plaintiffs filed their complaint in this matter alleging that Defendants breached the Settlement Agreement "by, among other things, continuing to sell Barefoot's books, selling coral calcium products using Barefoot's name and likeness, failing to pay royalties, and using inferior calcium products." Compl. ¶ 12. The Complaint further

alleges that Defendants "continued to sell Barefoot books and products to a company known as HBC Ventures LLC" ("HBC") and "HBC paid Holt millions of dollars from the sales of Barefoot books and products." *Id.* ¶ 13. The Complaint contains four counts against all defendants: (1) breach of the Settlement Agreement; (2) unjust enrichment; (3) breach of the implied covenant; and (4) Plaintiff seeks an accounting from defendants as to all coral calcium products sold using Barefoot's name, all royalties received pursuant "sublicensing agreements using Barefoot's name, and all sales of Barefoot's books. *Id.* at 3-6.

Defendants have counterclaimed against Plaintiffs, asserting that Defendants have complied with the Settlement Agreement and it is "Robert Barefoot and/or his corporations" who have failed to comply with their contractual obligations in accordance with the parties' Agreement." Counterclaim ¶ 7. Defendants allege that Barefoot failed to use best efforts to promote dietary supplements sold by Natures Benefit, and, further, "failed to permit Dr. Holt's corporations or affiliates to manufacture all coral calcium products in an exclusive manner." *Id.* ¶ 8-9. According to the counterclaims, Barefoot allegedly entered into a contract with a manufacturer to sell a competing coral calcium product known as Barefoot Coral Calcium Complete. Holt's counterclaim contains five counts: breach of contract, breach of the implied covenant, unjust enrichment, trade dress infringement and Lanham Act violations.

## II. Legal Analysis

### A. Summary Judgment Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

B.  Plaintiff's Motion for Partial Summary Judgment

1.  Defendants' Alleged Breaches of the Settlement Agreement

Plaintiff contends that Defendants breached the Settlement Agreement through the following actions:

1.  Holt continued to sell Barefoot Coral Calcium Plus and Barefoot Coral Calcium through 2008.  According to Plaintiff, "Barefoot has never given Holt permission to sell the product called Barefoot Coral Calcium and only gave permission for Holt to sell off the existing inventory of Barefoot Coral Calcium Plus."  Pl. Brf. at 6.

2.  Holt failed to donate a five percent royalty on future sales of Barefoot Coral Calcium Plus to Coral For Life, including sales by HBC.  Additionally, Holt failed to make $100,000 contribution to that organization.  *Id.* at 6-7.

3.  Holt failed to donate a piece of property located in Costa Rica to Coral For Life. *Id.* at 7.

4.  Holt sublicensed unspecified "trademark and publicity rights" without authorization.  *Id.*

5.  Holt continued to sell Barefoot's books despite the fact that the Settlement Agreement terminated "any right Holt had as to any of Barefoot's books."  *Id.*

The Court shall address each of these in turn below.  As an initial matter, however, it is important to note that Plaintiff's claims (breach of contract, unjust enrichment, breach of implied covenant, accounting) all center on allegations that Holt failed to perform obligations

8

in connection with the Settlement Agreement.  Plaintiff has asserted no claims in this action other than these four. Further, Plaintiff only seeks summary judgment on his breach of contract claim.  The contract in question here is the Settlement Agreement.  There is no dispute between the parties as to the validity and enforceable agreement, however, in dispute in this case are the rights and obligations of the parties to the agreement.

As noted earlier, summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir.2007) (quoting Fed.R.Civ.P. 56(c)) (internal quotations omitted).  As such, if contractual language is "subject to only one reasonable interpretation," summary judgement may be appropriate. *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999). Conversely, a contract is ambiguous if it is "susceptible of more than one meaning," *Sumitomo Mach. Corp. of Am., Inc. v. AlliedSignal, Inc.*, 81 F.3d 328, 332 (3d Cir. 1996), and its interpretation becomes a question of fact making summary judgment inappropriate. *In re Color Tile Inc.*, 475 F.3d 508, 515-16 (3d Cir. 2007).  "Although the construction of a written contract is usually a matter for the court, where its meaning is 'uncertain or ambiguous and depends upon parol evidence admitted in aid of interpretation, the meaning of the doubtful provision should be left to the jury." *Garden State Bldgs., L.P. v. First Fidelity Bank*, N.A., 305 N.J. Super. 510, 525, 702 A.2d 1315 (App. Div. 1997) (quoting *Michaels v. Brookchester, Inc.*, 26 N.J. 379, 387, 140 A.2d 199 (1958)).

> [The] question of whether contract terms are clear or ambiguous is one of law. Therefore, it is the task of the court to make a preliminary determination as to whether an ambiguity exists.  The burden is on the moving party to produce credible evidence that would entitle it to a directed verdict if not controverted at trial.  If the movant makes such an affirmative showing, the burden shifts to the opposing party to demonstrate the existence of a genuine issue of material fact for trial.  If the non-moving party presents us with a reasonable reading of the contract ... then a question of fact as to the meaning of the contract exists which can only be resolved at trial.

*Pennbarr Corp. v. Insurance Co. of North America*, 976 F.2d 145, 149 -150 (3d Cir. 1992) (citations and quotations omitted).

In determining whether a contract is ambiguous, a court does not simply determine, from its point of view, whether the language is clear.  *In re Valley Corp.*, 89 F.3d 143, 150 (3d Cir.1996).   Rather, the court may take into account extrinsic evidence.  *See U.S. v. Bryant*, 556 F. Supp. 2d 378, 457 (D.N.J. 2008) (noting that, in the civil context, "[a] determination of whether a contract is ambiguous requires the consideration of extrinsic evidence.") (citing *Valley Corp.*, 89 F.3d at 149-50.)  As has been noted by the Third Circuit, "[b]efore making a finding concerning the existence or absence of ambiguity, [courts] consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. ... Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning."  *Valley Corp.*, 89 F.3d at 150.

The Court now addresses each of the alleged breaches:

a.  Continued Sale of Supplements

Plaintiff first contends that Defendants breached the Settlement Agreement by selling

a product called "Barefoot Coral Calcium," which records show was sold by Defendants after the parties entered into the Settlement Agreement.  *See* Nagel Supp. Aff at Ex. F.  Plaintiff also contends the agreement was breached because Defendants continued to sell the product Barefoot Coral Calcium Plus, which records also show was sold by Defendants during that time.  *Id.* at Ex. J.  *See also* Declaration of Brian Riley and attached exhibits.  Plaintiff argues that because the Settlement Agreement was intended to terminate any business relationship between the parties, after the Settlement Agreement was executed Defendants were no longer permitted to sell products bearing Barefoot's name and likeness.

According to Plaintiff, "the Settlement Agreement terminated the prior Publishing Contract and adopted a new business arrangement pursuant to which Holt could continue to sell Barefoot Coral Calcium [Plus][3] only so long as it took to exhaust his existing inventory of the product."  Pl. Br. at 8.  As noted earlier, the Publishing Contract granted Wellness Publishing.com, an entity wholly owned by Holt Consulting, "the right to use [Barefoot's] name ... together with [Barefoot's] likeness" to advertise and promote the sale of the book Barefoot on Coral Calcium as well as undefined "associated items."  Publishing Contract at 3.  According to Plaintiff, any rights that Defendants had to use Barefoot's name and likeness selling such products derived from the Publishing Contract and, therefore, termination of that contract terminated such rights.

Defendants do not appear to deny that their sales of Barefoot Coral Calcium Plus after the Settlement Agreement went beyond merely their then-existing inventory.  In opposition to

---

[3]Given the context, the Court presumes Plaintiffs meant to refer here to Barefoot Coral Calcium *Plus*.

Plaintiff's motion and in support of their motion for summary judgment as to as to their liability for the sale of Barefoot Coral Calcium Plus, Defendants argue that nothing in the Settlement Agreement limited their future sales of Barefoot Coral Calcium Plus.  Defendants, in fact, claim the Settlement Agreement expressly permitted them to continue to sell Barefoot Coral Calcium Plus, pointing to the language in the Settlement Agreement that states that "Natures Benefit will donate a five percent royalty on future sales of Barefoot Coral Calcium Plus to "Coral For Life ..."  Settlement Agreement at 2.   They also point to paragraph 11 of Plaintiff's complaint which states in the relevant part that "Holt also agreed to cease all sales of Coral Calcium supplements using Barefoot's name with the exception of the product known as Coral Calcium Plus."  Comp. ¶ 11.  According to Defendants, these show that Defendants were entitled to continue selling Barefoot Coral Calcium Plus after the Settlement Agreement was entered into and, therefore, Defendants are entitled to summary judgment on all of Barefoot's claims concerning Defendants' sale of Coral Calcium Plus.

Plaintiff, on the other hand, claims that the only reasonable interpretation of the requirement that "Natures Benefit will donate a five percent royalty on future sales of Barefoot Coral Calcium Plus to "Coral For Life ..."(Settlement Agreement at 2) is that Defendants' future sales are limited to existing inventory.  Plaintiff argues that since the Settlement Agreement terminated the Publishing Contract, this is the only reasonable interpretation.

As noted above, if either party establishes that there is only one reasonable interpretation of the Settlement Agreement, summary judgment may be appropriate.

However, the evidence submitted by the parties here show that there exists multiple issues of material fact regarding each party's proffered interpretation of the Settlement Agreement with regard to Defendants' sale of Barefoot Coral Calcium and Barefoot Coral Calcium Plus.  For example, Barefoot states that the "main purpose" of the Settlement Agreement was for he and Holt to "completely part ways" and, therefore, the parties to the Settlement Agreement could not have intended that Defendants continue to sell products bearing Barefoot's name such as Barefoot Coral Calcium.  *See* Declaration of Robert Barefoot ("Barefoot Decl.") at ¶ 14.  However,  Stephen Bailey, who claims to have acted as Barefoot's "business manager" (Bailey Aff. ¶ 1) and who is the individual who brokered and drafted the Settlement Agreement, testified at his deposition that a continuing business relationship was not only contemplated by the parties, it was, in fact, "part and parcel to the [Settlement Agreement]." Deposition of Stephen Bailey at 13.  Indeed, the Settlement Agreement itself implies some sort of continuing relationship, stating, for example, that Barefoot will permit Holt's corporations "to manufacture all coral calcium products in an exclusive manner to be sold by an entity approved by Mr. Stephen Bailey which must be endorsed by Mr. Barefoot," and that Holt "will offer assistance to Mr. Barefoot . . . regarding future business undertakings." Settlement Agreement at 1.

Considering the plain language of the Settlement Agreement, the interpretations suggested by the parties and the extrinsic evidence, the Court finds that the agreement is ambiguous with respect to Defendants continued sale of the products at issue.  Summary judgment, therefore is inappropriate.  Both Plaintiff's and Defendant's motion for summary

judgment on this issue is denied.

b.  Monetary Donations to Coral for Life

Under the Settlement Agreement, Holt was to donate $100,000 cash to the non-profit "Coral For Life."  Also, the agreement required "Natures Benefit [to] donate a five percent royalty on future sales of Barefoot Coral Calcium Plus to 'Coral for Life.'"  Settlement Agreement at 2.  Barefoot alleges that Defendants breached the agreement because Barefoot "is not aware" that Holt made the $100,000 donation and, further that Holt "has not donated the required royalties to Coral for Life."  Nagel Aff., Ex. I, Barefoot Decl. ¶ 4.

Again, fact issues preclude the summary judgment Plaintiff seeks.  For example, in an affidavit and in deposition testimony Stephen Bailey, who claims to be the "sole member" of the non-profit entity Coral For Life, stated that Holt has made the $100,000 contribution. Bailey Aff. at ¶ 5A; Bailey Dep. at 49.  Additionally, Bailey testified that Holt has paid royalties to the entity.  Bailey Dep. at 39-41.  Consequently, the Court cannot find that undisputed facts establish that Defendants breached the agreement by failing to make the specified contributions to Coral For Life.

c.   Real Property Donation

Plaintiff claims that Holt was required, as part of the Settlement Agreement, to donate real property located in Costa Rica to Coral For Life.  Defendants deny this.  The language of the Settlement Agreement does not resolve the issue, as absolutely nothing in the agreement refers in any way to a donation of land.  In support of its motion, Plaintiff points only to several pages of deposition testimony of Stephen Holt discussing a parcel of land in Costa

14

Rica.  Having reviewed the testimony cited by Plaintiff at Nagel Aff., Ex. A at 503-508, the

Court finds that nothing in the testimony establishes that the Settlement Agreement, despite its

silence, incorporated the requirement claimed by Plaintiff.  The Court cannot, therefore, grant

Plaintiff summary judgment on the issue.

d.  Sublicensing

        In 2003, Holt Consulting and HBC entered into a Sublicense Agreement through

which Holt Consulting granted HBC certain rights it obtained through the Publishing

Contract.  Nagle Aff., Ex. C at 2.  The Publishing Contract was subsequently terminated by

way of the Settlement Agreement.  Settlement Agreement at 1.  Plaintiff claims that once the

Publishing Contract was terminated, "Holt had no right to sublicense intellectual property

rights to HBC[,] [h]owever Holt did so in violation of the Settlement Agreement."  Plaintiff

does not specify what "intellectual property rights" were allegedly sublicensed, nor does

Plaintiff specify the manner or mechanism in which the alleged sublicensing was done.

        Defendants do not appear to deny Plaintiff's allegations withe respect to their

activities.  However, Defendants do not refer to the activity as "sublicensing;" but rather refers

to it as "wholesaling and/or sub-contracting the sale and manufacture of Barefoot Coral

Calcium Plus as well as other coral calcium products."  Holt Decl. ¶ 3.  Defendants allege that

this "wholesaling" or "sub-contracting" was specifically contemplated by the parties in the

negotiation of the Settlement Agreement.  According to Holt, the parties had been engaged in

a business relationship for years and, therefore, Barefoot would have known that Holt's

companies did not have manufacturing facilities of their own "but were wholesaling or sub-

contracting the sale of, in effect, Barefoot Coral Calcium products."  Holt Decl. ¶ 5.

As Plaintiff seeks only summary judgment on its breach of contract claim, the Court denies Plaintiff's motion.  On the sparse record presented to the Court, Plaintiff simply has not established that there exist undisputed facts that show Defendants breached the Settlement Agreement through their activities relating to HBC.  As discussed above, the document is ambiguous as to the nature of the parties ongoing business relationship, if any, as well as the nature and extent of Defendants' right to continue to sell the coral calcium supplements at issue.  Therefore, Plaintiff's motion is denied, and to the extent that Defendants have moved for summary judgment on this issue, their motion is denied as well.

e.  Sale of Books

Plaintiff alleges that the Settlement Agreement terminated any rights that Defendants had to sell any of Barefoot's books.  Pointing to uncontroverted sales records from Nature's Benefit, Plaintiff alleges that Nature's Benefit sold Barefoot's book, *An Elixir of Life–Barefoot on Coral Calcium*, in violation of the Settlement Agreement.  See Nagle Aff. Ex. F (showing sales of the book by Nature's Benefit from 2004-2006).  Defendants do not raise any argument in opposition to Plaintiff's motion on this issue, and, in fact, agree that the Settlement Agreement "revert[ed] the *exclusive* rights to sell and license Barefoot's book back to Barefoot."  Def. Opp. Brf. at 14 (emphasis supplied).  As the parties agree that their intent in entering the Settlement Agreement was that Defendants would no longer sell Barefoot's books, and the undisputed facts showing that Nature's Benefit continued to sell Barefoot's book after the Settlement Agreement was entered, the Court grants Plaintiff's motion as to

Defendant's liability on this issue.

2.  Defendants' Counterclaims

Plaintiff seeks summary judgment dismissing all of Holt's counterclaims.  Holt asserts claims against Plaintiff for breach of contract, breach of the implied covenant, unjust enrichment, trade dress infringement and Lanham Act violations.  The first three counterclaims are based upon allegations that Plaintiff breached various obligations relating to the Settlement Agreement.  Counterclaim at 4-8.  The last two counterclaims allege that Defendants own the trademark "Barefoot Coral Calcium Plus" and that Plaintiffs' product Barefoot Coral Calcium Complete infringes on the Defendants' trademark and trade dress.  *Id.* at 9-10.

Plaintiff's entire "Legal Argument" in support of his motion to dismiss the five counterclaims consists of exactly twelve sentences.  Plaintiff argues that dismissal of all five counterclaims is warranted because these claims are based upon "the erroneous predicate that the Settlement Agreement somehow gave to Holt an exclusive right to Barefoot's name and likeness," and, Plaintiff argues, it did not.  Pl. Br. at 7-8.  Plaintiff contends that "there is nothing in the Settlement Agreement that precludes Plaintiffs from creating or selling other coral calcium products by using [Barefoot's] name and likeness."  As such, according to Plaintiff, the counterclaims must fail as a matter of law.

By way of its responding brief, Defendants have opposed Plaintiff's motion only as to the first and second counterclaim.  These counterclaims are for breach of contract and breach of the implied covenant.  To succeed on a breach of contract claim, a party must show "(1) a

contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).  Here, the first counterclaim alleges that Barefoot breached the agreement because he (1) "failed to permit Dr. Holt's corporations or affiliates to manufacture all coral calcium products in an exclusive manner"; (2) "failed to make any apparent effort . . . to promote" the dietary supplements sold by Nature's Benefit; and (3) entered into a contract to promote and sell a competing product that has "the same or similar dress code of defendants' product Barefoot Coral Calcium Plus without the written permission of Dr. Holt."  Counterclaim ¶¶ 8, 9, 10-15.

Under the terms of the Settlement Agreement, Barefoot is required to "permit any of ... Holt's corporations and affiliates to manufacture all coral calcium products in an exclusive manner ..." and Barefoot "must make best effort to promote and endorse all dietary supplement products."  Settlement Agreement at 2.  While Barefoot received under the Settlement Agreement "the rights to use the trademark Barefoot on Coral Calcium Plus or variations thereof for the sale of coral calcium products," Barefoot agreed that he would not "reproduce on any labels or commercial materials the dress code of the product Barefoot Coral Calcium Plus" without written permission from Holt.  *Id.*  Defendants' allegation that Barefoot breached these provisions does not appear to be based upon "the erroneous predicate that the Settlement Agreement somehow gave to Holt an exclusive right to Barefoot's name and likeness" as Plaintiff claims.  Given the express language of the Settlement Agreement, Plaintiff has not has not established that he is entitled to summary  judgment on the breach of

18

contract counterclaim as a matter of law.  Plaintiff's motion is denied as to the First Count of the Counterclaim.

A similar result is warranted for the second counterclaim, breach of the implied covenant of good faith and fair dealing.  "Every party to a contract, including one with an option provision, is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract."  *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates*, 182 N.J. 210, 224 (2005).  In this claim, Defendant alleged that Plaintiffs "failed to act in good faith and deal fairly with defendants" by, among other things, "secretly entering into a contract with a different manufacturer to market and sell a competing product with the same or similar trade dress of the defendants' product.  Counterclaim ¶¶ 18, 22. Here, Plaintiff has not has not established by way of his sparsely supported motion that there is no genuine issue of material fact with regard to this claim and that he is entitled to judgment on this claim as a matter of law.  Plaintiff's motion is denied as to the second counterclaim.

Moving to Defendants third counterclaim, unjust enrichment, the Court notes that it is based upon the same allegations as the first counterclaim for breach of contract.  It, therefore, shall be dismissed as duplicative.

The fourth and fifth counterclaims alleges trade dress and trademark infringement. Defendant has not opposed Plaintiff's motion as to these claims.  The Settlement Agreement provides Barefoot with the "rights to use the trademark Barefoot Coral Calcium Plus or variations thereof."   The Court, therefore, finds that there is no genuine issue of material fact and Plaintiff is entitled to summary judgment on these claims.  The Fourth and Fifth Counts of

the Counterclaim are dismissed.

C.  Defendants' Motions for Summary Judgment

Defendants filed three motions for summary judgment.  The first, titled "Motion for Partial Summary Judgment with Regard to Liability for the Licensing For Sale of Barefoot Coral Calcium Plus and Receipt of the Royalties Therefrom," shall be denied because of the existence of numerous issues of material facts surrounding the Settlement Agreement as discussed above.  Further, the motion relies upon provisions in the agreement, also discussed above, that the Court finds to be ambiguous.

In a second motion for summary judgment, Defendants seek summary judgment "dismissing Plaintiffs' [claim] of $35 million in damages, specifically, and Plaintiffs' damage claim generally."  Here, Defendants do not seem to be disputing the fact of Plaintiff's alleged damages but rather dispute the amount.  However, "mere uncertainty as to the amount [of damages] will not preclude the right of recovery." *Tessmar v. Grosner*, 23 N.J. 193, 203 (1957).  Accordingly, Defendants' motion shall be denied.

Last, Defendants move for summary judgment dismissing all claims against Holt individually and Wellness Publishing.  With respect to Wellness Publishing, Plaintiff has failed to meet its burden and "offer admissible evidence that establishes a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Plaintiff has not submitted a scintilla of admissible evidence from which a jury could find that Wellness Publishing bears any liability to Plaintiff on his claims.

20

Turning to Holt, the Court reaches the same result.  As Plaintiff points out, there is no dispute that Holt is the owner of the corporate defendants and that Holt was a signatory to the Settlement Agreement.  To the extent that Holt had personal obligations under the Settlement Agreement, the only one Plaintiff alleges that Holt breached was the promise to donate $100,000 to Coral For Life.  However, Plaintiff has not provided any evidence showing that Holt did not make that donation, while, as noted earlier, Stephen Bailey testified that Holt did so.  Plaintiff simply has not shown that a genuine issue of material fact exists warranting trial on the question.

As to the remaining breaches alleged in Plaintiff's motion for partial summary judgment (upon which Plaintiff relies for evidence in response to this motion), none, as far as the limited evidence submitted shows, involve a personal obligation of Holt under the Settlement Agreement.  As a result, Defendant's motion for summary judgment as to Holt and Wellness Publishing shall be granted.

**III.  Conclusion**

For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.  Defendants motions as to damages and the sale of Coral Calcium Plus are denied, and the motion as to the liability of Holt and Wellness Publishing is granted.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated:  November 16, 2009